Seth A. Gold (SBN 163220)
Seth.Gold@btlaw.com
Roya Rahmanpour (SBN 285076)
Roya.Rahmanpour@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Deborah Pollack-Milgate (Admitted Pro hac vice)
Deborah.PollackMilgate@btlaw.com
Joseph L. Fehribach (Admitted Pro hac vice)
Joseph.Fehribach@btlaw.com
**BARNES & THORNBURG LLP**
11 S. Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433

Attorneys for Plaintiffs
Paul E. Arlton and David J. Arlton

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL E. ARLTON, an individual and DAVID J. ARLTON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AEROVIRONMENT, INC. a Delaware corporation,<br><br>Defendant. | Case No. 2:20-cv-07438-AB (GJSx)<br><br>[Assigned to the Hon. André Birotte Jr.]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**<br><br>Hearing Date: March 26, 2021<br>Time:      10:00 a.m.<br>Location:    Courtroom 7B |

1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 3

    A.      The Arltons Developed the Technology Used by the Mars Helicopter Ingenuity in an SBIR Phase III Contract Involving NASA. ....................... 3

    B.      AeroVironment's Work on the Mars Helicopter Program Coincided with the Air Force Informing the Arltons that Lite's SBIR Programs Would Not Be Funded........................................................................................................ 4

    C.      The Mars Helicopter Program is an SBIR Phase III Program under 15 U.S.C. § 638 and the SBIR Policy Directive. ............................................... 4

    D.      AeroVironment's Mars Helicopter Design Suddenly and Radically Changed at the Same Time Lite was Wrongly Informed its SBIR Programs Were Not Funded........................................................................................... 5

    E.      The Arltons Have Sought, But Been Denied, Discovery. ..................... 8

III.    LEGAL STANDARD ............................................................................... 9

    A.      The Summary Judgment Standard and Rule 56(d) ...................... 9

    B.      The Small Business Innovation Research "SBIR" Statute ......................... 10

IV.     ARGUMENT ........................................................................................... 11

    A.      Summary Judgment Must Be Denied Because the Use of the Arltons' Invention Contradicted Statutorily-Articulated Governmental Policy. ....... 11

    B.      Summary Judgment Must Be Denied Because NASA/JPL Lacked Authority to Authorize AeroVironment's Infringement: NASA/JPL Were Obligated to Award the Mars Helicopter Contract to Lite. ........................ 13

    C.      Summary Judgment Must Be Denied Because the Government Lacked Authority to Consent to Infringement of the Arltons' Technology. ............ 15

    D.      The Arltons Are Entitled to Discovery Pursuant to Rule 56(d). ................ 16

V.      CONCLUSION....................................................................................... 21

i

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Astornet Techs. Inc. v. BAE Sys., Inc.*,
    802 F.3d 1271 (Fed. Cir. 2015) ................................................................8

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*,
    323 F.3d 767 (9th Cir. 2003) ...............................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................9

*Family Home & Fin Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ...............................................................9

*Jacobson v. United States Dep't of Homeland Sec.*,
    882 F.3d 878 (9th Cir. 2018) ...............................................................9

*Teleflora LLC v. Florists' Transworld Delivery*,
    2004 WL 2271602 (N.D. Cal. October 5, 2004) ................................10

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)..............................................................................9

**Statutes**

15 U.S.C. § 638 ......................................................................*passim*

28 U.S.C. § 1498 ....................................................................*passim*

**Other Authorities**

48 C.F.R.§ 52.227-1 ...........................................................1, 12

Fed. R. Civ. P. 34 ...............................................................17

Fed. R. Civ. P. 56 ...............................................................9

Fed.R.Civ.P. Rule 56(d).......................................................2, 9

Local Rule 7-3 .....................................................................17

ii

Rule 56(d)....................................................................................................9, 16, 17

SBIR Policy Directive 4(c)(4) (effective May 2, 2019), *available at*
    https://www.federalregister.gov/documents/2019/04/02/2019-
    06129/small-business-innovation-research-program-and-small-business-
    technology-transfer-program-policy..............................................................4, 10

U.S. Constitution Article I, Section 8 .......................................................................1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

AeroVironment, Inc. ("AeroVironment") suggests that the breadth and scope of its immunity is so broad as to make it completely untouchable, no matter the factual context in which its patent infringement takes place. It argues that the Federal Acquisition Regulatory Council has required that *all* government research and development contracts include a consent clause pursuant to 48 C.F.R.§ 52.227-1, which renders any and all government contractors and subcontractors immune from liability as a result of the Government's consent to the use of any invention described in a United States Patent. Dkt. No. 35, at 12-13 (citing 48 C.F.R. § 52.227-1). Thus, as a self-fulfilling prophecy, because Federal Acquisition Regulation ("FAR") consent is allegedly required, consent is thereby granted under 28 U.S.C. § 1498. Consequently, the argument goes, *no* government contractor involved in research and development can ever be held liable for patent infringement, no matter the factual circumstances. Whatever the merits of such an argument ordinarily would be, and leaving aside the serious constitutional questions raised by such an approach to the rights granted to inventors by virtue of Article I, Section 8 of the U.S. Constitution, the unique facts of this case, in particular, merit much more scrutiny before any such inscrutable result can apply.

The questions posed by AeroVironment's summary judgment are twofold, both of which must be explored against the backdrop of facts that have not yet been developed, including because AeroVironment has refused outright to respond to the Arltons' document requests served on November 19, 2020. (Declaration of Deborah Pollack-Milgate ("Pollack-Milgate Decl."), Ex. A.) *First*, is AeroVironment's use of the Arltons' invention in furtherance of a governmental policy within the meaning of 28 U.S.C. § 1498 when such use *directly contradicts* the competing framework of 15 U.S.C. § 638, the Small Business Innovation Research ("SBIR") Statute? Specifically, pursuant to the SBIR Statute, the Arltons' company, Lite Machines Corporation ("Lite"), should have

1

been awarded future SBIR "Phase III"[1] contracts for the Mars Helicopter Program because the Arltons had already developed the requisite technology for co-axial rotor unmanned aerial vehicles ("UAVs") and were ready, willing, and able to perform. *Second*, in view of such an obvious conflict between FAR clauses and Section 1498, on the one hand, and the SBIR Statute on the other, did the Government (in this case JPL/NASA) even have authority to consent to AeroVironment's use of the Arltons' technology? Or, was AeroVironment, in fact, directed *not* to use the Arltons' technology? As illustrated in the case law below, these two questions go to the heart of the question of whether here the "use or manufacture of [the Arltons'] invention was by or *for* the United States." 28 U.S.C. § 1498 (emphasis added).

Respectfully, the Arltons submit that on the facts yet to be developed in this matter, Section 1498 cannot apply to bar liability against a company that copies technology previously developed in connection with an SBIR contract. The application of Section 1498 would be particularly egregious here, where there was no justification whatsoever by NASA to move development work away from the Arltons – who had decades of expertise in the coaxial rotor technology necessary for a Mars landing – to AeroVironment, which had no such discernible experience. The Government's filing of a "Statement of Interest" on behalf of NASA, in which it redundantly swears behind the factual allegations AeroVironment has already offered without addressing the Arltons' technology contributions, only serves to underscore the important factual questions surrounding consent that *must* be answered as part of this lawsuit, and before it is proper for this Court to entertain a summary judgment motion.

Summary judgment must be denied outright; alternatively, consideration of this motion should be denied to permit discovery in the ordinary course, pursuant to Fed. R.

---

[1] Phase I, Phase II, and Phase III government contracts are terms defined in the SBIR Statute, referring to the stage of the technology development process. 15 U.S.C. § 638(e)(4), (11)-(13).

2

Civ. P. 56(d)(1).[2]

## II.    STATEMENT OF FACTS

### A.    The Arltons Developed the Technology Used by the Mars Helicopter Ingenuity in an SBIR Phase III Contract Involving NASA.

Paul and David Arlton are inventors and co-owners of the United States Patent No. 8,042,763 patent, which focuses on coaxial rotor UAV technology. (Declaration of Paul Arlton ("Arlton Decl."), ¶ 1, ¶ 4 & Ex. A thereto.) Since issuance of the '763 patent, the Arltons have provided a non-exclusive license to their company, Lite, as needed, to commercialize this technology, first as the Voyeur UAV and then as the Tiger Moth UAV. Both the Voyeur UAV and Tiger Moth UAV include the features of at least claim 1 of the '763 patent. (Arlton Decl., ¶ 5.) The Mars Helicopter Ingenuity also incorporates the technology claimed in the '763 patent. (*Id*., ¶ 20.)

Since 2005, Lite has been awarded over $30 million in SBIR and Small Business Technology Transfer ("STTR") sole-source prime contracts under 15 U.S.C. § 638 to develop and demonstrate the Voyeur UAV and Tiger Moth UAV for the Navy, Air Force, Army, and Special Operations Command. (*Id*., ¶ 6.) In all cases, the contracts used the technology of the '763 patent. (*Id*.) On September 29, 2010, Lite was awarded an SBIR Phase III sole-source prime contract by the Air Force numbered FA8651-10-C-0337. (*Id*., ¶¶ 7-8 & Ex. B.) Lite subsequently awarded a subcontract to the helicopter subject matter experts in the Army Aeroflightdynamics Directorate at NASA Ames to support control system development and flight testing of the Tiger Moth UAV. (Arlton Decl., ¶ 10.)

In May 2012, the Arltons presented a scientific research paper titled, "Control System Development and Flight Testing of the Tiger Moth UAV" at the American

---

[2] Separately, the Arltons are preparing a Motion for Leave to Amend the Complaint to add (1) Lite as a party to this matter, and (2) add claims related to theft of trade secrets. The Arltons are not proposing amendments to their patent infringement claims; thus, this summary judgment motion is unaffected by the proposed amendments. As will be explained, an amended complaint is necessitated by the discovery of Arltons' trade secrets embedded in the contracts that AeroVironment produced.

Helicopter Society 68th Annual Forum. The paper was coauthored by the lead helicopter expert and senior scientist at NASA Ames. (Arlton Decl., ¶ 13 & Ex. C.)

### B.    AeroVironment's Work on the Mars Helicopter Program Coincided with the Air Force Informing the Arltons that Lite's SBIR Programs Would Not Be Funded.

Between 2013 and 2015 the Air Force authorized payment of license fees to the Arltons for the '763 patent on multiple occasions. In October 2015, the Arltons proposed a new technology license to the Air Force for the '763 patent, but the Air Force did not respond to their proposal. (Arlton Decl., ¶ 15.)

In 2015, and up to January 2016, Lite was in negotiations with the Air Force for three new SBIR Phase III research, development, and commercialization contracts that included the Mars Helicopter. The negotiations concerned the '763 patent and the Tiger Moth UAV technology the Arltons developed and described in their SBIR Phase III research paper with NASA Ames in 2012. (*Id*., ¶ 16.)

On February 5, 2016, the Arltons were suddenly and unexpectedly informed there was no funding for the Tiger Moth UAV or any follow-on work. (*Id*., ¶ 18.) AeroVironment admits that it delivered the prototype Mars Helicopter to JPL on February 9, 2016. AeroVironment Answer, Dkt. No. 19, ¶18. This delivery coincides with the end of Lite's negotiations with the Air Force for the three new SBIR Phase III contracts including the Mars Helicopter.

### C.    The Mars Helicopter Program is an SBIR Phase III Program under 15 U.S.C. § 638 and the SBIR Policy Directive.

The SBIR Policy Directive defines SBIR Phase III as work that derives from, extends, or completes an effort made under prior SBIR/STTR funding agreements, but is funded by sources other than the SBIR/STTR programs. 15 U.S.C. § 638(e)(6)(C). Phase III work may be for products, production, services, research, research and development, or any such combination. *See* SBIR Policy Directive 4(c)(4) (effective May 2, 2019), *available at*
https://www.federalregister.gov/documents/2019/04/02/2019-06129/small-business-

innovation-research-program-and-small-business-technology-transfer-program-policy.

The Mars Helicopter Ingenuity incorporates the technology claimed in the '763 patent and included in Lite's SBIR Phase III research project involving NASA Ames. (Arlton Decl., ¶¶ 20-21.) Thus, the Mars Helicopter Ingenuity derives from, extends, or completes work done by Lite under prior SBIR funded efforts for the Tiger Moth UAV. (*Id.*, ¶ 21.) In addition, upon information and belief, the Mars Helicopter program was funded by sources other than the SBIR/STTR programs including congressional appropriations. Thus, the Mars Helicopter program meets all of the criteria for SBIR Phase III work pursuant to 15 U.S.C. § 638 and the SBIR Policy Directive. The Mars Helicopter program, therefore, is an SBIR Phase III program.

**D.    AeroVironment's Mars Helicopter Design Suddenly and Radically Changed at the Same Time Lite was Wrongly Informed its SBIR Programs Were Not Funded.**

AeroVironment's first subcontract with JPL on November 20, 2013 for "Mars 2020 Heli-Scout Support and Testing" (Subcontract No. 1494045) involved developing a "Program Plan" for the "Propulsion" and "Fuselage portions" of the Heli-Scout as well as generating test data for "Mars Heli-Scout Subsystems." (Dkt. No. 36-1, Ex. 1 to Declaration of Joseph Beckman ("Beckman Decl.") at AV00000514.) The Mars Heli-Scout utilized technology that was entirely distinct from the Arltons' technology and the '763 patent. AeroVironment's second contract with JPL on September 8, 2014 (Subcontract No. 1512602) related to what NASA/JPL called the Heli-Scout System and a "coax VTOL" (coaxial rotor Vertical Take-Off and Landing) air vehicle. (Dkt. No. 36-2, Ex. 2 to Beckman Decl., at AV00000526.) It involved a "Mars 2020 Heli-Scout Conceptual Design Study" of "a simplified mechanically stabilized coax VTOL that is capable of liftoff and stable vertical flight." (*Id.* at AV00000529.) The conceptual Heli-Scout was a small stick-like model that lacked a practical control system. *See infra* and https://www.nytimes.com/2020/06/23/science/mars-helicopter-nasa.html. Again, this

technology was entirely distinct from that of the Arltons and the '763 patent. Work continued along these lines for the next 1-2 years.

Early in 2016, however, all that changed. While the statement of work for Subcontract No. 1512602 called for AeroVironment to "build on previous coaxial helicopter design work developed under Subcontract 1494045" (i.e. the small stick-like model), (Dkt. No. 36-2, Ex. 2 to Beckman Decl., at AV00000529), AeroVironment instead suddenly and radically diverged from the statement of work to incorporate the technology of the '763 patent. (Pollack-Milgate Decl., Ex. E) Below is a screenshot of an engineer at AeroVironment standing next to a model of a simplified mechanically stabilized coax VTOL (on table at right) alongside the Mars Helicopter (on table at left) during a news interview on July 28, 2020,[3] which illustrates the technological leap between the diminutive Mars Heli-Scout conceptual design (barely visible) and the significantly more robust Mars Helicopter Ingenuity incorporating technology from the '763 patent.

"Stick-like" Mars Heli-Scout



---

[3] https://www.nbclosangeles.com/news/national-international/here-are-ways-to-get-involved-in-nasas-mars-rover-launch/2403611/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**

1  Below is a comparison of the Mars Helicopter Ingenuity with Figure 15 of the
2  Arltons' patent.

### Mars Helicopter Ingenuity Rotor System[1]



**Fig. 3 Rotor System, including the rotor blades and hubs, swashplates and control linkages, servos, propulsion motors, and main mast structure**

### United States Patent No. 8,042,763



23  The foregoing highlights the significant questions to be resolved with regard to
24  the origin of the design of the Mars Helicopter Ingenuity: who was responsible for
25  incorporating the technology of the '763 patent into the Helicopter, and whether
26  AeroVironment was encouraged – or discouraged – from using Arltons' technology.
27  / / /
28  / / /

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**

1

### E.      The Arltons Have Sought, But Been Denied, Discovery.

2       On November 19, 2020, the Arltons served their First Set of Requests for

3   Production of Documents, seeking information to learn (1) how it could be that Lite's

4   SBIR programs, including the Mars Helicopter Program were purportedly no longer

5   being funded, *while* (2) AeroVironment was in reality utilizing their technology and

6   collaborating with NASA/JPL to build the newly-minted Mars Helicopter Ingenuity.

7   The Document Requests included requests to understand (1) what was communicated to

8   AeroVironment by NASA/JPL and when, (2) what designs had been offered by

9   AeroVironment and when, (3) what had led to the decision to adopt certain critical

10  design elements from the Arltons, and (4) what other uses AeroVironment might be

11  making of the Arltons' technology. (Pollack-Milgate Decl., ¶ 2 & Ex. A.)

12       Instead of responding to these Requests, AeroVironment served 40 pages of

13  objections, refusing to produce anything other than the government contracts,

14  contending that, "'Any discovery on the merits should proceed, if at all, only after the

15  Court resolves AeroVironment's motion for summary judgment on its Section 1498

16  defense, consistent with Congress's intent "to relieve private Government contractors

17  from expensive litigation with patentees.' *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802

18  F.3d 1271, 1277 (Fed. Cir. 2015) (quoting *TVI Energy Corp. v. Blane*, 806 F.2d 1057,

19  1059–60 (Fed. Cir. 1986)." (Pollack-Milgate Decl., ¶ 3 & Ex. B.)

20       This motion could have been brought against the backdrop of more than just the

21  contracts – without AeroVironment having to wait even a single day longer to file it.

22  Instead of arguing this summary judgment motion with the benefit of documents it

23  easily could have produced, AeroVironment chose to bring its motion in a factual

24  vacuum, without documents, testimony, attachments to its JPL contracts, or having

25  served a single request on the Arltons.

26  / / /

27  / / /

28

8

## III.    LEGAL STANDARD

### A.    The Summary Judgment Standard and Rule 56(d)

Fed. R. Civ. P. 56 permits grant of summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Here, the Defendant has refused to engage in discovery, instead arguing that summary judgment can be determined by a review of its contracts with JPL alone. Courts, however, routinely stress the importance of a full and factual record and reiterate that due process requires courts to "afford the parties a full opportunity to present their respective cases" before ruling on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Indeed, Rule 56(d)(2) reflects exactly that sentiment, expressly contemplating that summary judgment may be denied outright, or consideration deferred to "allow time" for the non-movant "to take discovery." In other words, a nonmoving party must not be "railroaded" into summary judgment by a "premature motion." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Where, as here, a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56([d]) motion fairly freely." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *Jacobson v. United States Dep't of Homeland Sec.*, 882 F.3d 878, 883 (9th Cir. 2018). Pursuant to Rule 56(d), a party opposing summary judgment must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *See Family Home & Fin Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Courts grant continuances to conduct discovery "fairly freely" if summary judgment is requested early in the litigation. *Burlington*, 323 F.3d at 773 (granting a continuance for discovery where plaintiff's request for summary judgment less than one

9

month after filing suit). Less specificity of facts the movant hopes to discover is allowed
where, as here, a summary judgment motion is filed early on in a litigation. *Teleflora
LLC v. Florists' Transworld Delivery*, 2004 WL 2271602, at *4 (N.D. Cal. October 5,
2004) (citing *Celotex Corp.*, 477 U.S. at 326).

**B.    The Small Business Innovation Research "SBIR" Statute**

The SBIR Statute starts by recognizing that "[r]esearch and development are
major factors in the growth and progress of industry and the national economy." 15
U.S.C. § 638. Noting that small businesses are at a "competitive disadvantage," and that
the "competitive free enterprise system" may be weakened as a result, the stated policy
of Congress is to give assistance to small business concerns "to enable them to undertake
and to obtain the benefits of research and development in order to maintain and
strengthen the competitive free enterprise system and the national economy." *Id.* at (a).

As a result, 15 U.S.C. § 638(r)(4) requires: "To the greatest extent practicable,
Federal agencies and Federal prime contractors *shall* . . . (B) issue, without further
justification, Phase III awards relating to technology, including sole source awards, to
the SBIR and STTR award recipients **that developed the technology**." (Emphasis
added.) This is known as the SBIR Phase III mandate.

According to the SBIR Policy Directive published by the Small Business
Administration, "no agency may apply policies, directives, or clauses that contradict,
weaken, or conflict with the policy as stated in the directive." *See*
https://www.federalregister.gov/documents/2019/04/02/2019-06129/small-business-
innovation-research-program-and-small-business-technology-transfer-program-policy.
Thus, no agency is permitted to issue a Phase III award to a company other than the one
that developed the technology. JPL was *not* permitted to issue a Phase III award to
AeroVironment.

/ / /

/ / /

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO
DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. <u>ARGUMENT</u>

### A. Summary Judgment Must Be Denied Because the Use of the Arltons' Invention Contradicted Statutorily-Articulated Governmental Policy.

Summary judgment must be denied because there are material questions of fact to be resolved before this Court can determine, as a matter of law, whether Section 1498 can apply when such application would run contrary to governmental policy.

AeroVironment recites that a use is "for the Government" if it is in furtherance and fulfillment of a stated Government policy which serves the Government's interests and which is 'for the Government's benefit.'" Dkt. No. 35, at 8 (citing *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.,* 369 F. Supp. 3d 963, 975-77 (C.D. Ca. 2019)). Based on the case law, AeroVironment contends that this question of policy can be "all but bypassed" because its infringing activity was pursued as a government contractor pursuant to a government contract. *Id.* at 8. It then fails to articulate *any* policy, simply reciting that its work was for JPL and NASA in connection with the Mars Exploration Program. *Id.* Assuming that this question of policy has been bypassed in other cases, as AeroVironment suggests, it is improper to bypass that inquiry here.

As set forth in detail in Mr. Arlton's Declaration, the Arltons developed the technology of the patent in suit, and associated technology, and licensed that technology to the Government through their company, Lite. (Arlton Decl., ¶¶ 14, 16.) Specifically, over the course of many years, the Arltons developed technology pursuant to SBIR Phase I and Phase II contracts, including in connection with the Arltons' Tiger Moth UAV which, like the Mars Helicopter Ingenuity, includes the Arltons' patented technology, *inter alia* a coaxial rotor UAV configured with a hollow mast tube. (*Id.*, ¶ 16.)

As demonstrated in Mr. Arlton's declaration, the Arltons' efforts were longstanding and substantial. The Arltons submit that, based on successful fulfillment of their obligations in connection with their prior SBIR Phase I, Phase II, and Phase III contracts, the work that JPL awarded to AeroVironment on the Mars Helicopter Program should have been awarded to their company, Lite, as an SBIR Phase III Award by

11

operation of the SBIR Statute, 15 U.S.C. § 638(r)(4). (*Id*., ¶¶ 16-17.) AeroVironment has not sought discovery into the Arltons' substantial contracts with the Government. If it had, it would know that Lite was clearly entitled to the Mars Helicopter contracts that were awarded to AeroVironment, in particular Subcontract No. 1512602, based on a plain reading of the SBIR Statute, *unless* the Mars Helicopter Program were to forego use of the Arltons' technology.

The SBIR Statute was specifically created to encourage and support innovation by small businesses, such as Lite. Far from fulfilling a "government policy," application of Section 1498 here would undermine one that has been amply lauded by the Small Business Administration. For example, as recently as 2019, the Small Business Administration denounced in its Policy Directives that small businesses were improperly being denied Phase III contracts and that their intellectual property was being taken: (1) "agencies have failed to use [their] authority, bypassed the small business that created the technology, and pursued the Phase III work with another business . . .  "; and (2) the Government has been "providing the data to bigger contractors for development, thereby cutting out the small business. This unfortunate situation not only robs small businesses of revenues, but it also results in expensive legal costs for small businesses to protect their data rights."[4] *See* https://www.federalregister.gov/documents/2019/04/02/2019-06129/small-business-innovation-research-program-and-small-business-technology-transfer-program-policy.

The ultimate question presented, therefore, is whether the addition of a FAR clause, 48 C.F.R. § 52.227-1, and, by extension, Section 1498 can apply to permit an infringer to avoid liability for patent infringement where application of Section 1498 would *expressly contradict* the SBIR Statute. Suffice it to say that when AeroVironment neglects a "policy" discussion, *this discussion* is the one being neglected. But this is the policy discussion that must take place before this Court should consider the Defendant's affirmative defense on summary judgment.

---

[4] These comments are especially apt as applied to this matter.

12

AeroVironment notes that "Section 1498 was enacted 'to stimulate contractors to furnish what was needed for the [First World] War, without becoming liable themselves for infringements to inventors or the owners or assignees of patents.'" Dkt. No. 35, at 13 (quoting *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.,* 369 F. Supp. 3d 963, 975-77 (C.D. Cal. 2019) (further citations omitted). The application of Section 1498, here, could not be more removed from the articulated policy purpose of this Statute. There was no compelling need such as pending war for JPL to authorize AeroVironment to infringe the '763 patent. Discovery will show that AeroVironment had no experience in the coaxial rotor UAV design that was ultimately adopted. The technology included in the Tiger Moth UAV system, and all of Arltons' knowledge of rapid prototyping and special manufacturing processes developed over years of production operations were immediately available to NASA for use in the Mars Helicopter Program. (Arlton Decl., ¶ 14.) The Government did not need to seize the Arltons' technology to make the Mars Helicopter Ingenuity a reality; the Arltons' would have willingly provided it.

More broadly, it would appear that with the combination of FAR immunities and Section 1498, the rule against liability has completely swallowed the exceptional circumstances, such as war-time efforts, that justified Section 1498 in the first instance. But this larger threat to intellectual property need not be addressed by this case, because the question before this Court will concern whether Section 1498 can apply in view of the factual record yet to be developed and, in light of the contradiction between Section 1498 and the SBIR Statute.

**B.     Summary Judgment Must Be Denied Because NASA/JPL Lacked Authority to Authorize AeroVironment's Infringement: NASA/JPL Were Obligated to Award the Mars Helicopter Contract to Lite.**

In 2015, The Arltons were in in the process of developing a state-of-the-art R&D and manufacturing facility in Carlsbad, California, to produce the Tiger Moth UAV (now the Mars Helicopter) and support Lite's future government research and development contracts. The Arltons planned to invest at least $9 million in facilities and equipment and arranged a $5.2 million bank loan and $1 million in tax abatements over

13

1    five years from the State of California. They also planned to hire at least 90 full-time

2    employees at Lite. (Arlton Decl., ¶ 14.)

3          Pursuant to the SBIR Policy Directive, NASA/JPL was obligated to award an

4    SBIR Phase III sole-source prime contract to Lite for the Mars Helicopter program to

5    the greatest extent practicable (the Phase II Mandate). As the sole-source prime

6    contractor Lite would have the option of awarding subcontracts to JPL and/or

7    AeroVironment at its discretion. When JPL awarded a contract for the Mars Helicopter

8    to AeroVironment, however, it violated the Phase III Mandate.

9           In addition, JPL was put in direct competition with Lite. JPL's contract with

10   NASA specifically prohibits JPL from competing with commercial enterprises such as

11   Lite. Section B-1(b) of NASA's contract to JPL decrees *the Contractor shall not use its*

12   *privileged information or access to facilities to compete with the private sector in*

13   *contravention of FAR 35.017*. (Dkt. No. 36-4, Ex. 4 to Beckman Decl. at AV-00000007.)

14   Yet it appears this is exactly what JPL did. JPL used its privileged information about

15   Lite's technology and SBIR funding, and access to facilities at Cal Tech, to complete

16   directly against Lite, thereby putting Lite out of business.

17         Lite anticipated hiring 90 employees to support its future government R&D

18   contracts including contracts for the Mars Helicopter. (Arlton Decl.,  ¶ 14.) Instead JPL

19   took this business from Lite and employed 150 scientists, engineers and technicians at

20   JPL, NASA, and AeroVironment. *See* https://www.airspacemag.com/space/helicopter-

21   dreams-of-mars-180971739/. Stated simply, JPL lacked authority to permit

22   AeroVironment to take the Arltons' patent and team within JPL to compete against Lite,

23   when NASA/JPL were obligated under the SBIR Policy Directive to award the Mars

24   Helicopter Program to Lite. Clearly, based on the facts presented here, 15 U.S.C. § 638

25   and Section 1498 are in conflict.

26   / / /

27   / / /

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO
DENY SAME PURSUANT TO FED. R. CIV. P. 56(d)**

**C.    Summary Judgment Must Be Denied Because the Government Lacked Authority to Consent to Infringement of the Arltons' Technology.**

Pursuant to Section 1498, the question to be addressed in connection with the use of the Arltons' technology is whether such use was with the authorization or consent of the United States. Dkt. No. 35, at 7 (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d at 1381). In view of the foregoing statutory obligations, as set forth in detail above, there are questions of material fact regarding the Government's authority to consent to AeroVironment's infringement. If AeroVironment has its way, the Government would be free to disregard the SBIR Statute at its whim and shield its co-conspirators in the process. The Government's obligations to the Arltons (which will be established further in discovery from the Arltons), viewed against the backdrop of the SBIR Statute, should defeat the proffer of Section 1498 as an affirmative defense.

AeroVironment relies on the express consent provided contractually to JPL by NASA and, in turn, through "flow-down" FAR clauses to AeroVironment. But such a superficial analysis fails to account for the unique facts of this case. There is a material question regarding whether that consent was possible on these facts. Assuming the Government *did* have the ability to consent to AeroVironment's infringement, as AeroVironment argues, and could legally permit any third party to infringe the Arltons' technology, discovery is still necessary to determine whether in fact the Government did so.

This case presents a rare instance in which the Government now holds conflicting obligations, a conflict it could have avoided easily. On the one hand, the Government is obligated to respect the Arltons' patent rights and the competitive advantage they represent to Lite, and to abide by the SBIR Statute in issuing Phase III awards to Lite. On the other hand, the Government is ostensibly obligated to indemnify contractors such as AeroVironment against damages for patent infringement under Section 1498. It could be that the Government (JPL or NASA) tried to meet its obligations to the Arltons and Lite by instructing AeroVironment *not* to use the Arltons' technology, either directly

15

or indirectly, for the Mars Helicopter, but AeroVironment disregarded those instructions, putting the Government in a bind.

Here, too, summary judgment cannot be determined until the Court can consider, on well-developed facts, whether consent was possible and, if so, whether it was granted or revoked in view of conflicting obligations. There is a story here and the Arltons are entitled to learn it before this Court considers AeroVironment's affirmative defense.[5]

### D.    The Arltons Are Entitled to Discovery Pursuant to Rule 56(d).

In counsel for AeroVironment's Declaration in support of its summary judgment motion, counsel states that in November the Arltons "did not identify any [] discovery" "they believed was necessary to their opposition of AeroVironment's motion beyond production of the contracts." Dkt. No. 35-2, at 3. Counsel then states in connection with a conference between the parties on January 8, that "[Plaintiffs] provided no authority for why any of the discovery they seek in this case, beyond the contracts that AeroVironment has already produced, is relevant" to the determination of the Section 1498 issues. *Id.* at 4. These statements leave the distinct misimpression that the Arltons have not stated what discovery they would need in connection with this motion and why. **This is not so.** The Arltons outlined in a telephone call what discovery they needed and, by way of follow-up correspondence, detailed expressly what discovery was needed and why. (Pollack-Milgate Decl., ¶¶ 4-9 & Ex. C.) AeroVironment, for its part, simply

---

[5] As an aside, AeroVironment has in no way differentiated the Arltons' patent infringement claims in connection with its motion. In particular, AeroVironment has not demonstrated that Section 1498 would bar a declaratory judgment action. This is significant because the Mars Helicopter Ingenuity will be the first aircraft to fly on another planet. This historical first has been dubbed "the Wright brothers' moment for Mars." *See* https://www.scientificamerican.com/article/nasas-ingenuity-the-first-ever-off-world-helicopter-is-set-for-a-wright-brothers-moment-on-mars/. By invoking Section 1498, AeroVironment hopes to avoid a declaratory judgment and solidify its place in history as the first to fly on another planet when, in truth, the Arltons invented the enabling technology behind the Mars Helicopter Ingenuity and the Arltons – not AeroVironment -- are entitled their rightful place in history.

16

disagrees that discovery is needed based on its theory of why it is entitled to summary judgment.[6]

Partially, this Rule 56(d) Motion is a motion of the Defendant's own doing. The Arltons served document requests early in this matter such that, under Fed. R. Civ. P. 34, full responses would be due, in all likelihood, prior to any motion for summary judgment being filed. The Arltons acted quickly so they could respond more fully to AeroVironment's affirmative defenses. AeroVironment, however, has refused to provide anything other than the contracts themselves (minus any exhibits or attachments).

The Arltons are entitled to responses to all of their Requests, especially given that they have been outstanding since November 2020. In connection with this motion and consistent with their prior discovery requests, the Arltons expressly request documents relating to: AeroVironment's use of the Arltons' technology, attempts to design around the Arltons' technology, and NASA/JPL requirements and specifications. Each of these categories – in addition to discovery yet to be had from the Arltons – bears on the issue of whether the Government had the obligation to award an SBIR Phase III contract to the Arltons, whether Section 1498 can apply in view of what the Arltons believe the Government's obligations to them were under the SBIR Statute, and whether the Government provided any directions to AeroVironment to avoid the Arltons' technology, such that consent was either not given, or even expressly revoked. More generally, each of these relates to the factual background that should be developed before this Court considers whether such a broad application of Section 1498 is legally proper in view of the SBIR Statute.

---

[6] It should also be noted that AeroVironment did not conduct any conference with Plaintiffs devoted to its summary judgment motion. As shown in counsel for AeroVironment's declaration, counsel raised its summary judgment motion in connection with a scheduling conference, and in connection with meeting and conferring with regard to its failure to provide the requested documents. Although it is clear that the result of a conference pursuant to Local Rule 7-3 would have been futile, Plaintiffs and their counsel were surprised by the timing of this motion in view of the lack of such a conference.

17

For example:

(1) Plaintiffs' Request for Production No. 18 seeks: "All Documents and Things concerning any effort made by You to examine, inspect, or reverse engineer any rotary wing aircraft designed, made, offered for sale or sold by or on behalf of the Arltons, including without reservation the Tiger Moth UAV, as described in the open literature, including without limitation in a research paper titled 'Control System Development and Flight Testing of the Tiger Moth UAV' which was presented to the American Helicopter Society in 2012."

As noted in Paul Arlton's declaration, Lite was awarded Phase III "SBIR" and Small Business Technology Transfer ("STTR") sole-source prime contracts under 15 U.S.C. § 638 to develop and demonstrate the Voyeur UAV and Tiger Moth UAV for the Navy, Air Force, Army, and Special Operations Command. (Arlton Decl., ¶ 6 & Ex. B.) Thus, any follow-on work (including the Mars Helicopter) related to their technology developed through these Phase III programs should have been awarded to Lite. 15 U.S.C. § 638(r)(4). Request No. 18 will show whether NASA/JPL and AeroVironment's intent from the beginning was ultimately to copy Plaintiffs' technology. Such documents may also resolve the issue of whether NASA/JPL provided direction away from the Arltons' technology, a disputed issue of material fact. They may also show or verify the nature of the work already accomplished by JPL, such that one may begin to piece together the true origin of the Mars Helicopter Program. These documents are important to build a full factual predicate upon which this Court would rule on summary judgment and/or to show whether or not the Government could, or did, consent to AeroVironment's use of the Arltons' technology.

(2) Plaintiff's Request for Production No. 7 seeks:  "All product brochures, engineering or product specifications; engineering change orders; drawings; schematics; technical, service, or operational manuals; and component lists concerning the design, structure, development, testing,

18

manufacture, assembly, acquisition, or operation of any Accused

Product."

Such materials will likewise show whether or not Defendant independently designed the Mars Helicopter, or if Defendant was given specifications that explicitly instructed Defendant to develop a technology different from that of the Arltons. The fact that the Mars Helicopter contracts were not awarded to Plaintiffs could mean that it may have been JPL's and Defendant's intent in the beginning to develop an alternative to Plaintiffs' technology. Indeed, the earlier contract looks far less problematic from a technical perspective.

Moreover, the Government was fully aware of the '763 patent and had paid patent license fees in the past on multiple occasions. (Arlton Decl., ¶ 15.) The fact that the Government did not immediately pay licensee fees to the Arltons for AeroVironment's infringement could also mean that the Government did not authorize AeroVironment's infringement but instead instructed AeroVironment to develop an alternative design. In addition, NASA accepted the Mars Helicopter Ingenuity from AeroVironment. Did the Government believe at the time of delivery that the Mars Helicopter Ingenuity was AeroVironment's unique design free and clear of any patent license obligations to Arltons? This fact, too, bears on whether the Government consented under the unique circumstances of this case.

In short, there is no way for the Arltons to know whether or not all of AeroVironment's activities using the Arltons' technology were actually within the scope of the Mars Helicopter prime contract and the sub-contracts (and, hence, with the authorization and consent of the Government) without first being given all documents necessary for the Arltons to make that determination.

(3) Plaintiffs Request for Production No. 9 states: "All Documents and Things concerning any decision to change to or adopt the design of the Accused Product to include a non-rotating structural mast."

(4) Plaintiffs' Request for Production No. 32 states: "All Documents related to the use or anticipated use of, or research activities engaged in or planned in connection with, any rotary wing aircraft having a coaxial rotor system characterized by a non-rotating structural mast, whether in connection with the Mars Helicopter Program or otherwise."

These Requests, too, are relevant to understanding how it is that the design of the Accused product came to be. The terms "mast" and "non-rotating," in particular, are all words that AeroVironment has used to describe features of the Mars Helicopter Ingenuity. *See Design and Fabrication of the Mars Helicopter Rotor, Airframe, and Landing Gear Systems,* AIAA Scitech 2019 Forum (Arlton Decl. ¶ 23 & Ex. D.). Such technology directly implicates the use of Plaintiffs' technology and these documents may show whether AeroVironment did nor did not have the authorization and consent to use Plaintiffs' technology.

Request No. 4 is also relevant to the question of any plans to otherwise utilize the Arltons' technology. AeroVironment has indicated that there are no such plans, but discovery on this point is critical to confirm that this is the case because it such activities were planned, separate and apart from the Government, that would be an infringement that would clearly fall outside the scope of the immunities of Section 1498.

In addition to the foregoing, a few other points are worth noting. The self-selected contracts that AeroVironment has produced are not complete because they do not include their respective attachments. Those attachments, many of which relate to JPL Requirements, are likely to show whether JPL adopted specifications and other documents provided to the Government by the Arltons and then passed those on to AeroVironment. Because the question before the Court is a serious one, namely, the reach of immunity of AeroVironment, against the backdrop of outright copying of SBIR technology by AeroVironment and, potentially, with the aid of the Government, the

20

Court needs a complete record.[7] NASA's involvement has also been put squarely at issue, by NASA itself.

In sum, the legal issues presented by way of AeroVironment's motion are significant. AeroVironment would have this Court declare it immune without any further ado, irrespective or the SBIR Statute and NASA's prior work with and obligations to the Arltons. If this Court indeed is to determine that the Statute is as broad as AeroVironment contends, it should do so against a full factual record.

## V.    CONCLUSION

Summary judgment should be denied outright, or deferred until such time as the Arltons have had the opportunity to conduct discovery and take depositions in the ordinary course.

Dated:  March 5, 2021                    **BARNES & THORNBURG LLP**

By:  _/s/ Roya Rahmanpour_
     Deborah Pollack-Milgate
     Joseph L. Fehribach
     Seth A. Gold
     Roya Rahmanpour
     Attorneys for Plaintiffs Paul E. Artlton and
     David J. Arlton

---

[7] In view of NASA's Statement of Interest, and its direct prior work with the Arltons, a subpoena directly to NASA will also likely be necessary. So as to not burden third parties, the Arltons were delaying third party discovery to await production by Defendant. If, however, the Court is inclined to permit only abbreviated discovery, the Arltons will expedite such discovery to include NASA.

21